No. 12-4366

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Dec 23, 2014
DEBORAH S. HUNT, Clerk

PEABODY COAL COMPANY,

     Petitioner,

v.

DIRECTOR OFFICE OF WORKERS' COMPENSATION
PROGRAMS, ET AL.,

     Respondents.

)
)
)
)
)
)
)
)
)
)
)

O R D E R

**BEFORE:**  DAUGHTREY, COOK, and WHITE, Circuit Judges.

The court received a petition for rehearing en banc.  The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case.  The petition then was circulated to the full court.[*]  No judge has requested a vote on the suggestion for rehearing en banc.

Therefore, the petition is denied.

**SUTTON**, Circuit Judge, concurring in the denial of en banc review, in which **KETHLEDGE**, J., joined. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), holds that Congress may not enact legislation that reopens final judgments entered by an Article III court without trespassing on the separation-of-powers guarantees of the Constitution.  In today's case, our court has construed a provision of the Black Lung Benefits Act in a way that seems to do just that.  Based on an amendment to the Act—included in the Patient Protection and Affordable Care Act of 2010 (ACA), Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260—the court has transformed a final judgment rejecting a claim for survivor benefits into a judgment granting

---

[*]Judge Boggs recused himself from participation in this ruling.

them.  That does not happen every day.  And, with respect, it should not have happened here, both because the statute does not lend itself to this interpretation and because the Constitution prohibits it.  That does not mean full court review is necessary or for that matter a good idea, particularly since three other appellate courts have gone down the same trail.  *See Jim Walter Res., Inc. v. Dir., Office of Workers' Comp. Programs*, 766 F.3d 1333 (11th Cir. 2014); *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387 (3d Cir. 2013); *Union Carbide Corp. v. Richards*, 721 F.3d 307 (4th Cir. 2013).  But it may mean that other courts should pause before heading down this path.

Arthur Hill worked in the coal mines of western Kentucky for roughly forty years.  He smoked nearly the whole time.  In 1987, the Department of Labor found him disabled due to black lung disease and awarded benefits under the Black Lung Benefits Act.  We affirmed the award.  *See Peabody Coal Co. v. Hill*, 123 F.3d 412 (6th Cir. 1997).  A few years later, Hill developed pancreatic cancer, and he died in 2000.  His widow Eva applied for black lung survivor benefits.  Using the then-applicable causation standard, the Department denied her claim because cancer unrelated to black lung caused her husband's death.  We again affirmed. *See Hill v. Peabody Coal Co.*, 94 F. App'x 298 (6th Cir. 2004).  Eva did not file a petition for a writ of certiorari with the Supreme Court, and the judgment became final.

In 2010, Congress made it easier for the survivors of deceased miners to obtain benefits under the Act in the course of enacting the ACA.  It created a new causation standard, one providing that, if a miner was receiving black lung benefits at the time of his death, then he presumptively died from black lung disease, eliminating the wife's burden of establishing the causation of death, automatically granting her survivor benefits, and sparing her the need to file any claim at all.  All agree that the amendments apply to new requests for survivor benefits and to pending claims filed after January 1, 2005.

The question is whether the law should apply to claims finally resolved before January 2005 and refiled after the 2010 effective date.  Our court and three others permit such refiled

claims.  That permits the Department of Labor effectively to reopen claims denied under the old law, to apply the new law to those claims, and to require the miner's employer to provide benefits for those previously rejected claims under the new relaxed causation standard.  *See Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs*, 577 F. App'x 469, 470 (6th Cir. 2014) (citing *Consolidation Coal Co. v. Maynes*, 739 F.3d 323 (6th Cir. 2014)).  Under this interpretation, the ACA effectively says this:  "Any action for survivor benefits that previously was dismissed for lack of causation but that would have been granted under the new rules shall be reinstated on motion by the claimant, no matter how long ago an earlier denied claim became final."  *See Consolidation Coal*, 739 F.3d at 327–28.  I doubt whether this rule honors the statute it purports to interpret or that it comports with the Constitution.

First things first:  The language of the 2010 amendment does not support this interpretation, much less require it.  Through the ACA, Congress made two substantive changes to the Black Lung Benefits Act.  Section 1556(a) reinstates the pre-1981 rule that disabled miners who worked underground for at least fifteen years presumptively suffer from black lung disease.  Pub. L. No. 111-148 (2010).  And § 1556(b) reinstates the pre-1981 rule that survivors of those miners receiving benefits while alive are automatically entitled to benefits and do not even need to file a claim to obtain them.  *Id.*  Congress directed the Department of Labor and the courts to apply both changes "to claims filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act," which is March 23, 2010.  *Id.* § 1556(c).  According to our court, "Congress was silent as to whether persons . . . whose claims had been denied under the previous eligibility framework[ ] could receive benefits by filing a subsequent claim."  *Consolidation Coal*, 739 F.3d at 326.

How does the language of the statute count as silence on the issue at hand?  Congress said that "pending" claims (if filed after January 1, 2005) and claims filed "after" passage of the Act would receive the benefit of the changes.  Congress created a dichotomy between "pending" claims and other claims.  Yet the Courts of Appeals' prevailing interpretation takes the

claims-filed-after-enactment language to refer to any and all claims, whether previously rejected or not. If true, that would mean that the "pending" claim side of the dichotomy does no work. With respect to applicants whose claims were finally rejected before the amendment took effect in 2010, they could simply file new claims after 2010, as happened here. With respect to applicants whose claims were pending at the time of enactment and yet were filed *before* January 2005, they could simply dismiss the claims and refile new claims. This problem evaporates if we accept the most natural reading of the language—that it applies to claims pending on the day of enactment (if filed after January 2005) and claims filed after the day of enactment.

That is one flaw in the prevailing interpretation; here is another. Legislation is presumed to be prospective unless Congress expressly makes it retroactive. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 277–80 (1994). If we apply the amendments to *all* subsequent claims, that transforms Congress's express provision for, and limits on, retroactivity in § 1556(c)—making them applicable only to claims pending on the date of enactment and filed after January 2005— into a meaningless gesture and mocks the presumption against retroactivity in the process. Why, to repeat, restrict the new law to pending claims filed after a certain date if all it takes to avoid the cutoff is to *reapply*?

Even if we put all of that to the side, and even if we assume that Congress was silent about whether to apply the 2010 amendments to new claims, that does not support the prevailing interpretation. Silence or what comes to the same thing—ambiguity—about this issue requires avoiding, not instigating, a conflict between the statute and the constitutional requirements of *Plaut. Clark v. Martinez*, 543 U.S. 371, 380–81 (2005).

Not even appeals to fairness support the prevailing interpretation. Amendments to the Black Lung Benefits Act are not new, and they are not new on this precise burden of proof issue. *See Vision Processing, LLC v. Groves*, 705 F.3d 551, 553–54 (6th Cir. 2013). The last time Congress altered the standard—in 1981—it did not apply the new standard to previously

decided claims.  *See Pothering v. Parkson Coal Co.*, 861 F.2d 1321, 1328 (3d Cir. 1988).  I would follow the same path here.  Even the sponsor of § 1556, the late Senator Robert Byrd, did not think this reading of the statute unfair.  In post-enactment comments, Senator Byrd, no foe of coal miners, said the amendments would apply only to pending claims and those from survivors "who never filed for benefits."  156 Cong. Rec. S2,083–84 (daily ed. Mar. 25, 2010).

If I am wrong about this interpretation, that does not help Mrs. Hill.  For it transforms the statute into one that for all practical purposes mirrors the one invalidated in *Plaut*.  There, Congress tried to apply a new statute of limitations for securities fraud actions to claims already dismissed as untimely.  *Id.* at 214–15.  The Supreme Court struck down the law as a congressional assumption of judicial power.  "Having achieved finality," the Court explained, "a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was."  *Id.* at 227.  So too here.  The ACA permits subsequent claims for survivor benefits after a final denial of that claim based solely on an intervening statute.  We already affirmed that Mrs. Hill is not entitled to such benefits because black lung disease did not cause her husband's demise, as measured by the then-existing causation standards.  Congress may not say otherwise as to *that* judgment.  Nor does it make a difference that *Plaut* involved a new statute of limitations and this case involves a new burden of proof.  In illustrating how its decision worked, *Plaut* rejected the proposition "that final judgments rendered on the basis of a stringent . . . rule of pleading or proof may be set aside for retrial under a new liberal . . . rule of pleading or proof."  *Id.* at 229.

How then has our court and three others sidestepped *Plaut*?  All four say that the ACA created a new cause of action; it did not reopen a final judgment.  *See, e.g., Consolidation Coal*, 739 F.3d at 327–28.  But the Constitution's separation-of-powers protections do not melt in the face of new labels.  What amounts to "reopening final judgments," *Plaut* explains, turns on function, not labels.  "When retroactive legislation requires its own application in a case already

5

finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.'"  *Plaut*, 514 U.S. at 225.  What purports to make this claim "new" is the repeal of the causation element:  Survivors no longer must show a miner died from black lung disease to win benefits.  *Consolidation Coal*, 739 F.3d at 328.  Even though Congress might "eliminate . . . a particular element of a cause of action that plaintiffs have found it difficult to establish," it may not apply that change retroactively to finally adjudicated claims.  *Plaut*, 514 U.S. at 228.  Dubbing the claim a "new cause of action" changes nothing unless the claim arises from facts "collateral to" and "uniquely separable from" the original claim, *id.* at 236 (internal quotation marks omitted)—unless in other words the claim arises from a new "case" with a different "nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Any other interpretation trivializes *Plaut*.  It would mean that, even the day after the Court decided the case, Congress could have remedied the problem by crossing out the language about "reinstating" dismissed claims and replacing it with a new right of action retroactive to the very same fraud.  That is doubtful.

Does it make a difference whether the judicial branch creates the separation-of-powers violation itself, as here (by interpreting the statute to have this effect), rather than by having the violation expressly thrust upon it by Congress, as in *Plaut*?  No.  The point of dividing power is to protect individual liberty, not the branches of government themselves.  *See Bond v. United States*, 131 S. Ct. 2355, 2365 (2011).  Just ask Peabody Coal.  Whether the First Branch (via express language) or the Third Branch (via interpretation of a federal statute) undoes the prior judgment in its favor makes no difference to the company.  It invokes the Constitution's structural guarantees to prevent *any branch* from directly or indirectly accomplishing this end.

What of the reality that, under pre-existing law, a miner or spouse may bring a second benefits claim with respect to the same miner?  *See Buck Creek Coal Co. v. Sexton*, 706 F.3d 756 (6th Cir. 2013).  Claimants may bring such claims, to be sure, but based only on new facts.

6

*Sexton* illustrates the point because it turned on a new set of facts—the miner's *deteriorating condition*. 706 F.3d at 760. Here, by contrast, the new cause of action arises from precisely the same set of facts as the survivor's original claim. As *Plaut* explains, the separation-of-powers question often will come down to the law of claim preclusion at the time of the new law. *See Plaut*, 514 U.S. at 234. Traditional rules of preclusion do not permit successive claims arising solely from old, already litigated facts. *See Restatement (Second) of Judgments* § 24 (1982). Subsequent changes in case law do not change that rule either. *See, e.g.*, *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 437–38 (6th Cir. 1981). Nor do new statutes: "Mere adoption of new statutory provisions does not defeat claim preclusion . . . if a single closed transaction is involved." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4411, at 265–66 (2d ed. 2002); *see also Antonioli v. Lehigh Coal & Nav. Co.*, 451 F.2d 1171, 1176–77 (3d Cir. 1971) (holding that plaintiffs who had lost two prior actions under the Railway Labor Act were precluded from seeking the same relief under later-enacted amendments).

Consistent with *Sexton* and the traditional preclusion rules, the Department of Labor's own regulations at the time the ACA was adopted barred reopening claims after a year absent a change in one of the "conditions of entitlement" underlying the prior denial. 20 C.F.R. § 725.309(d)(2) (2010). This regulation expressly ruled out subsequent survivor claims unless they were "unrelated to the miner's physical condition at the time of his death." *Id.* § 725.309(d)(3); *see also Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended*, 65 Fed. Reg. 79,920, 79,973 (December 20, 2000) (explaining that subsequent claims are barred "[w]here a previous survivor's claim was denied solely on the basis that the survivor did not prove that the miner died due to pneumoconiosis, an element not subject to change").

The existence of four Courts of Appeals' decisions permitting the reopening of final judgments denying survivor benefits offers ample reason to think that there is something to the

7

prevailing interpretation.  But there may be another way of looking at the issue, as this concurrence seeks to explain.

**BERNICE BOUIE DONALD,** Circuit Judge.  I write to address the unusual procedural posture of the above-styled "concurrence" in the denial of en banc review.  I write with respect for the longstanding rules of the court that one panel cannot overrule the decision of another panel and that a panel decision is entitled to respect and adherence, unless or until overturned by the en banc court, or by a decision of the Supreme Court.  The posture of this action threatens to take the court down a slippery procedural slope.

## I.

The authoring judge posits that this case was wrongly decided for three reasons:  (1) the panel's decision in this case, and others like it, violates the Supreme Court's holding in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995); (2) Section 1556 "does not lend itself to [the] interpretation" that a final judgment rejecting a claim for survivors' benefits may be "transformed" into a judgment granting them; and (3) the United States Constitution similarly prohibits this result.  The authoring judge charges that the "doubtful" conclusions reached by the *Peabody* panel "do[] not happen every day," "should not have happened here," "trivialize[] *Plaut*," and contravene separation-of-powers protections by merely slapping a "new label" on an otherwise final judgment.  Nonetheless, the author simultaneously maintains that full-court review is not necessary "[nor] for that matter a good idea," and that "[t]he existence of four Courts of Appeals' decisions permitting the reopening of a final judgments denying survivor benefits offers ample reason to think that there is something to the prevailing interpretation."  How can all of these seemingly contradictory comments be reconciled?

The issue presented in this case is deemed important enough to warrant a separate critique, but not important enough to warrant polling or rehearing by the full court.  As the order accompanying these statements indicates, no judge has requested a vote on Peabody's suggestion for rehearing en banc.  That means that not even the authoring judge concluded that

the standard for en banc review has been satisfied.  *See* Fed. R. App. P. 35.  Yet, while the author "concurs" that en banc review is not merited, he proceeds to challenge the interpretation of §1556 reached by two panels of this court and three of our sister circuits.  While this unusual circumstance is not completely devoid of precedence, I have been able to identify only a handful of instances in the history of this court in which one or more judges has filed a concurrence in the denial of a request for en banc rehearing.  In every single one of those cases, the concurrence was filed only after an en banc poll had been requested, but failed to garner the requisite number of votes.  *See e.g., Mitts v. Bagley*, 626 F.3d 366 (6th Cir. 2010); *Am. Civil Liberties Union of Kentucky v. McCreary Cnty., Kentucky*, 361 F.3d 928, 929 (6th Cir. 2004).  In the present case, no poll was ever requested.  The present case stands in stark isolation.

## II.

In 2010, the Patient Protection and Affordable Care Act ("ACA") amended the eligibility requirements for survivors' benefits under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944, by reinstating Section 932(*l*) of the Act's automatic survivors' benefits for claims filed after January 1, 2005, that were pending on or after the ACA's March 23, 2010, enactment date.  Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010) ("Section 1556").  In light of these amendments, survivors whose claims meet these temporal requirements need no longer demonstrate that the miner's death was caused by pneumoconiosis; instead, the survivors need only show that the miner was determined to be eligible to receive BLBA benefits at the time of his death.

As the author points out, everyone agrees that the ACA's amendments to § 1556 apply to new requests for survivors' benefits and to pending claims filed after January 1, 2005.  The point of disagreement, however, is whether the amendments apply to claims denied before January 1, 2005, and refiled after the March 23, 2010, effective date.  In unanimous decisions, two panels of this court, along with three of our sister circuits, have answered that question in the affirmative. *See Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs*, 577 F. App'x

9

469, 470 (6th Cir. 2014); *Consolidation Coal Co. v. Maynes*, 739 F.3d 323, 325 (6th Cir. 2014) (Donald, J.); *Jim Walter Res., Inc. v. Dir., Office of Workers' Comp. Programs*, 766 F.3d 1333 (11th Cir. 2014); *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387 (3d Cir. 2013); *Union Carbide Corp. v. Richards*, 721 F.3d 307 (4th Cir. 2013).  No circuit court to have considered this issue has reached a contrary conclusion.

The arguments now raised by the authoring judge merely reiterate the arguments made by the respective coal companies in these cases.  All of these arguments have consistently been rejected.  The author first takes issue with this court's finding that "Congress was silent . . . as to whether persons . . . whose claims had been denied under the previous eligibility framework[] could receive benefits by filing a subsequent claim."  *Consolidation Coal*, 739 F.3d at 326.  The other circuits have made the same observation.  *See Jim Walter Res.*, 766 F.3d at 1335 ("[The coal company] objects to [the court's] interpretation [of the statute], noting that this construction necessarily implies that *all* subsequent claims filed by previously denied survivors will benefit from the amendments.  [The coal company] is correct, but we find no indication that Congress intended otherwise."); *Marmon Coal*, 726 F.3d at 392 ("Section 1556(c) . . . refers to 'claims' without any qualifying language.  The reference to claims is not explicitly limited to 'first time' or 'original' claims and it does not explicitly exclude 'subsequent' claims."); *Richards*, 721 F.3d at 310 ("Section 1556 is silent as to whether survivors whose previous claims were denied may now receive benefits by filing 'subsequent' claims under amended Section 932(*l*)." )  The author, however, suggests there is no silence in the statutory scheme, and instead avers that Congress spoke to the issue at hand by stating that "'pending' claims (if filed after January 1, 2005) and claims filed 'after' passage of the Act [on March 23, 2010,] would receive the benefit of the changes."

I would first note that the author's phrasing beneficially inverts the language of the provision.  Section 1556(c) actually reads as follows:  "The amendments made by this section shall apply with respect to claims filed . . . after January 1, 2005, that are pending on or after the

10

enactment of this Act."  There is simply nothing in the plain language of this provision supporting the argument that persons whose claims for survivors' benefits were rejected prior to the amendments in the ACA cannot assert subsequent claims.  The word "claim" is not qualified by the addition of any modifying terms such as "new," "first time," "original," or any variation thereof.  *See Marmon Coal*, 726 F.3d at 392; *Richards*, 721 F.3d at 313-14.  If Congress had intended to exclude subsequent claims, it could have done so explicitly through the simple expedient of adding a modifying adjective.  In the absence of clear congressional intent to achieve this result, it is not the place of the courts to read gratuitous limiting language into a statutory provision.  *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (internal quotation marks omitted)).

The author then excavates five words from the post-enactment comments of Senator Robert C. Byrd, the sponsor of § 1556, in an effort to find support for his position.  The statement, in greater detail, is as follows:

> It is clear that [section 1556] will apply to all claims that will be filed henceforth, including many claims filed by miners whose prior claims were denied, or by widows who never filed for benefits following the death of a husband.  But section 1556 will also benefit all of the claimants who have recently filed a claim, and are awaiting or appealing a decision or order, or who are in the midst of trying to determine whether to seek a modification of a recent order.
>
> Section 1556 applies immediately to all pending claims, including claims that were finally awarded or denied prior to the date of enactment of the Patient Protection and Affordable Care Act, for which the claimant seeks to modify a denial, or for which other actions are taken in order to modify an award or denial. . . .  Section 1556 applies even if a final order is modified, or actions are taken to bring about the modification of an order, subsequent to the date of enactment of the Patient Protection and Affordable Care Act. . . .

156 Cong. Rec. S2083 (daily ed. March 25, 2010).  The petitioner coal companies referenced this same statement before the Third Circuit in *Marmon Coal* and the Fourth Circuit in *Richards*.

*See Marmon Coal*, 726 F.3d 387, 392-93; *Richards*, 721 F.3d at 316.   The Fourth Circuit

succinctly dispensed with this argument:

> Petitioners attempt to divine congressional intent to exclude subsequent claims from the amendment's ambit by parsing a single post-enactment statement of the late Senator Robert C. Byrd, sponsor of Section 1556. . . .   [But] [a]s the Supreme Court has observed, '[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.' *Bruesewitz v. Wyeth LLC*, [562 U.S. 223], 131 S. Ct. 1068, 1081, 179 L. Ed. 2d 1 (2011).   In any case, although Senator Byrd's statement may imply that the amendment excludes those widows who *did* file prior claims for benefits, it does not explicitly state as much.   Meanwhile, his observation that the amendment applies to 'all claims that will be filed henceforth' can be read to encompass subsequent claims, and his description of the scope of the statute as 'including' certain types of claims connotes that his selected examples were intended to be illustrative of the amendment's reach, not exhaustive.   In short, any inference drawn from Senator Byrd's ambiguous post-enactment statement cannot overcome the plain text of the amendment, which indicates its application to 'all claims,' without qualification.

*Richards*, 721 F.3d at 316.

The author goes on to argue that the prevailing interpretation of this statute transforms it,

for all practical purposes, into one that mirrors the statute invalidated in *Plaut*.  As the argument

goes:  if our interpretation of § 1556 is correct, then Congress has impermissibly assumed

judicial power by reinstating a cause of action finally adjudicated by an Article III court.  Further,

the circuit courts are charged with "sidestepp[ing]" *Plaut* by claiming that the ACA created a

"new cause of action" rather than reopening a final judgment.

The ACA did indeed create a new cause of action, a fact that is not a judicially created

"label" designed to evade *Plaut*.  To reach this conclusion, we can start with the simple premise

that the ACA, as the author acknowledges, *reinstated* the pre-1981 rule that survivors of miners

suffering from pneumoconiosis and receiving benefits while alive are automatically entitled to

benefits.  From 1981 until the ACA's enactment in 2010, survivors could only obtain benefits by

proving that the miner's death was due to pneumoconiosis.  But, as everyone acknowledges, by

reinstating the pre-1981 rule, the ACA's amendments dispense with this requirement and

mandate that survivors are automatically entitled to benefits irrespective of whether the miner's

death was due to pneumoconiosis.  Under the current regime, survivors whose claims meet the aforementioned temporal requirements need only show that the miner was determined to be eligible to receive BLBA benefits at the time of his death.

Inherent in acknowledging that the ACA reinstated the prior rule is acknowledging that the rule—which is what gives rise to the cause of action—did not exist when the rule was not in place.  Because the amendment created a new cause of action that was unavailable to these survivors when they brought their initial claims—or at least reinstated a cause of action that was repealed from 1981 to 2010—res judicata does not bar their subsequent claims.  Res judicata has four elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013) (quoting *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).  At issue in these cases is the identity of the causes of action.

The coal companies, in invoking res judicata, and the author, in suggesting that subsequent claims are not "new" because they arise from the same "nucleus of operative fact," ignore the fact that it is not solely changes in fact that give rise to a fresh cause of action.  *See Richards*, 721 F.3d at 315.  Changes in the law can have the same effect, especially when those changes modify which facts are considered relevant.  *Id.*; *see also Marmon Coal*, 726 F.3d at 395 ("In [the survivor's] first claim, [she] could recover only by proving that her husband's death was due to pneumoconiosis.  The resolution of that issue centered on the fact-finder's review of medical evidence.  In contrast, in her subsequent claim, [the survivor] can recover without proving that her husband's death was due to pneumoconiosis.  The cause of death is not at issue, and the medical evidence presented during the first claim is no longer relevant.  Rather, [the survivor's] entitlement to benefits turns primarily on an administrative fact—whether her husband had been awarded benefits.  This administrative fact was not

relevant to her first claim.  The subsequent claim thus involves a different cause of action, and res judicata does not prevent [the survivor] from receiving survivors' benefits under the BLBA." (footnotes omitted)).

Simply stated, neither the doctrine of res judicata nor appeals to general separation-of-powers principles can preclude parties from bringing claims that did not exist at the time of the prior proceeding, and where the relevant statute does not explicitly prohibit them.  *Consolidation Coal*, 739 F.3d at 327.  The arguments of the author, far from presenting "another way of looking at the issue," merely reiterate arguments that have already been presented, carefully considered, and uniformly rejected by circuit courts across the country.


**ENTERED BY ORDER OF THE COURT**

**Deborah S. Hunt, Clerk**

14