No. 12-4366

---

**IN THE**
# United States Court of Appeals
**FOR THE SIXTH CIRCUIT**

PEABODY COAL CO.,

*Petitioner*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

and

EVA ELIZABETH HILL,

*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

---

## PETITIONER'S BRIEF

---

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# And Financial Interest

Sixth Circuit
Case Number: 12-4366            Case Name: Peabody Coal Co. v. Director, OWCP

Name of counsel: Laura Metcoff Klaus

Pursuant to 6th Cir. R. 26.1, Peabody Coal Co. .
<span style="font-size:smaller">                                        Name of Party</span>
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identify of the parent corporation or affiliate and the relationship between it and the names party:

> Peabody Coal Company is a wholly-owned subsidiary of Patriot Coal Corp.
> Patriot Coal Corp. is traded on the NYSE as PCX.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____February 4, 2013_____the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.


_____s/ Laura Metcoff Klaus_____

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

i

# TABLE OF CONTENTS

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ............................................ i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................... x

I.     JURISDICTIONAL STATEMENT ............................................... 1

II.    ISSUES PRESENTED .......................................................... 1

III.   STATEMENT OF THE CASE ................................................... 2

     A.    Mrs. Hill's First Claim ................................................. 2

     B.    Mrs. Hill's Second Claim ............................................. 3

IV.   STATEMENT OF FACTS ...................................................... 6

V.     SUMMARY OF ARGUMENT .................................................. 6

VI.   ARGUMENT ................................................................... 9

     A.    Standard of Review. ..................................................... 9

     B.    Principles of Separation of Powers Preclude Reopening or Reconsidering Mrs. Hill's Entitlement to Black Lung Benefits .... 10

         1.    The History of PPACA's Amendments to the BLBA............ 10

         2.    Congress Lacks Authority to Reopen this Court's Final Decision ......................................................... 14

         3.    Even Without a Separation of Powers Analysis, No Exception to Finality Can Be Inferred from Congressional Silence in Section 1556 of PPACA ........................................ 18

     C.    The Denial of Finality Here Deprives Peabody of Due Process .... 23

VII. CONCLUSION ................................................................... 25

REQUEST FOR ORAL ARGUMENT

CERTIFICATION OF COMPLIANCE

# TABLE OF AUTHORITIES

<u>Cases:</u>

*Allen v. McCurry,*
   449 U.S. 90 (1980) ....................................................................... 20,21

*Arch of Kentucky v. Director, OWCP [Hatfield],*
556 F.3d 472, 477-79 (6th Cir. 2009) ....................................................... 9

*Astoria Fed. S & L Ass'n v. Solimino,*
   501 U.S. 104, 102-108 (1991) ........................................................... 19

*B&G Constr. Co. v. Director, OWCP,*
   662 F.3d 233 (3d Cir. 2011) ......................................................... 13, 24

*Bishop v. Shelby Fuels Corp.,*
   2002 WL 818315 (6th Cir. 2002) (unpublished) ............................................. 20

*Boden v. G. M & W Coal Co., Inc.,*
   23 Black Lung Rep. 1-38 (Ben. Rev. Bd. 2004) ............................................. 20

*Buck Creek Coal Co., v. Sexton,*
   *F.3d (6th Cir. 2012)* ...................................................................... 19

*Clark v. Martinez,*
   543 U.S. 371, 380-81 (2005) .............................................................. 17

*Coleman v. Director, OWCP,*
   345 F.3d 861 (11th Cir. 2003) ............................................................ 20

*Consolidation Coal Co., v. Borda,*
   171 F.3d 175 (4th Cir. 1999) ............................................................. 24

*Dickinson v. Zurko,*
   527 U.S. 150 (1999) ...................................................................... 24

*Director, OWCP v. Greenwich Collieries,*
   512 U.S. 267 (1994) ....................................................................... 9

*Director, OWCP v. Newport News Shipbldg & Dry Dock Co.,*
   514 U.S. 122 (1995) ....................................................................... 9

iii

*Eastover Mining Co. v. Williams,*
  338 F.3d 501, 508 (6th Cir. 2003) ........................................................ 9

*Farmer v. Director, OWCP,*
  2006 WL 1737476 (4th Cir. June 19, 2006) (unpublished) ...................... 20

*Federated Dep't Stores, Inc. v. Moitie,*
  452 U.S. 394 (1981) ........................................................................ 21

*Gibas v. Saginaw Mining Co.,*
  748 F.2d 1112, 1119 (6th Cir. 1984) .................................................. 9

*Grundy Mining Co. v. Flynn,*
  353 F.3d 467, 476 (6th Cir. 2003) ...................................................... 9

*Hayburn's Case,* 2 Dall. 409 (1792) ........................................................ 14

*Kendrick v. BethEnergy Mines, Inc.,*
  2002 WL 187401 (6th Cir. 2002) (unpublished) .................................... 20

*Kremer v. Chemical Constr. Co.,*
  456 U.S. 461 (1982) ........................................................................ 20

*Kurcana v. Holder,*
  558 U.S. __ (2010) .......................................................................... 9

*Landgraf v. USI Film Products,*
  511 U.S. 244 (1994) ................................................................ 7,14,21

*Lubrizol Corp. v. Exxon Corp.,*
  929 F.2d 960 (3d Cir. 1991) ............................................................ 20

*Machinists v. Street,*
  367 U.S. 740, 749-50 (1961) ............................................................ 17

*Mack v. Matoaka Kitchekan Fuel,*
  12 Black Lung Rep. 1-197 (Ben. Rev. Bd. 1989) ................................ 20

*Marbury v. Madison,*
  1 Cranch 137, 177 (1803) ................................................................ 14

*Mayo Found. for Med. Ed. & Research v. United States,*
  562 U.S. __, 131 S. Ct. 704, 713 (2011) ............................................ 23

*Meade v. National Mines Corp.,*
  2002 WL 31096746 (6th Cir. 2002) (unpublished) ........................... 20

*Metropolitan Stevedore Co. v. Rambo,*
  521 U.S. 121 (1997) ................................................................. 2,18

*Mobile, J. & K.C.R. Co. v. Turnipseed,*
  219 U.S. 35 (1910) .................................................................... 24

*Montana v. United States,*
  440 U.S. 147 (1979) ................................................................... 20

*Morrison-Knudsen Constr. Co. v. Director, OWCP,*
  461 U.S. 624 (1983) .................................................................... 9

*Mullins Coal Co. v. Director, OWCP,*
  484 U.S. 135 (1987) ................................................................... 24

*Newport v. Fact Concerts, Inc.,*
  453 U.S. 247 (1981) ................................................................... 19

*Peabody Coal Co. v. Hill,*
  123 F.3rd 412 (6th Cir. 1997) ....................................................... 2

*Pittston Coal Group v. Sebben,*
  488 U.S. 105 (1988) ............................................................. passim

*Plaut v. Spendthrift Farm, Inc.,*
  514 U.S. 211 (1995) ............................................................. passim

*Potomac Elec. Power Co. v. Director, OWCP,*
  449 U.S. 258 (1980) .................................................................... 9

*Powell v. Langley & Morgan Corp.,*
  2001 WL 1563929 (6th Cir. 2001) ................................................ 20

*Rapanos v. United States,*
  547 U.S. 715 (2006) .................................................................... 9

*Taylor v. Sturgell,*
  553 U.S. 880 (2008) ................................................................... 20

*United States v. Home Concrete & Supply, LLC,*
  566 U.S. __, 132 S. Ct. 1836 (2012) ............................................ 23

*United States v. Schooner Peggy*,
1 Cranch 103 (1801)..................................................................... 14

*United States v. Sioux Nation*,
448 U.S. 371 (1980)..................................................................... 16

*United States v. Texas*,
  507 U.S. 529 (1993) ................................................................... 19

*United States v. Throckmorton*,
98 U.S. 61, 65 (1878).................................................................... 7

*United States v. Turley*,
  357 U.S. 407 (1957) .................................................................... 19

*United States v. Utah Constr. and Mining Co.*,
  384 U.S. 394 (1966) ................................................................... 20

*University of Tennessee v. Elliott*,
  478 U.S. 788 (1986) ................................................................ 19,20

*Venicassa v. Consolidation Coal Co.*,
  137 F.3d 197 (3d Cir. 1998).......................................................... 24

*Watts v. Peabody Coal Co.*,
  17 Black Lung Rep. 1-68 (Ben. Rev. Bd. 1992) ............................... 20

*West Virginia Coal Workers' Pneumoconiosis Fund v. Director*,
  671 F. 3d 378 (4th Cir. 2011), *cert. denied*, __ U.S. __ (2012) ...................... 24

Statutes and Regulations:

Administrative Procedure Act, 5 U.S.C. §§ 551-559 ......................................... 9
  5 U.S.C. § 559 ....................................................................... 9

Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945
  30 U.S.C. § 921(c)(4) ................................................................ 4
  30 U.S.C. § 931 ...................................................................... 4
  30 U.S.C. § 932(a).................................................................. 1,18
  30 U.S.C. § 932(c), (j)(3) .......................................................... 22
  30 U.S.C. § 932(*l*) ................................................................. 4
  30 U.S.C. § 945 ..................................................................... 22

30 U.S.C. § 945(b)(1) ........................................................... 21
30 U.S.C. § 945(c) ................................................................ 22

Longshore and Harbor Workers' Compensation Act,
   33 U.S.C. § 921(b) .............................................................. 1
   33 U.S.C. § 921(c) .............................................................. 1
   33 U.S.C. § 922 .................................................................. 18

Federal Coal Mine Health and Safety Act of 1969,
   Pub. L. No. 91-173, 83 Stat. 792, as amended .................... 1

Black Lung Benefits Act of 1972, Pub. L. No. 92-303,
   86 Stat. 150 (1972) ............................................................. 1

Black Lung Benefits Revenue Act of 1977,
   Pub. L. No. 95-227, 92 Stat. 11 (1978) ............................... 1

Black Lung Consolidation of Administrative Responsibility Act,
   Pub. L. 107-275, § 4 (107th Cong. 2d Sess. Nov. 2, 2002) ................... 16

Black Lung Benefits Reform Act of 1977,
   Pub. L. No. 95-239, 92 Stat. 95 (1978) ............................... 1,21

Black Lung Benefits Revenue Act of 1981 and
   Black Lung Benefits Amendments of 1981,
   Pub. L. No. 97-119, 95 Stat. 1635 (1981) ........................... 1

Consolidated Omnibus Budget Reconciliation
   Act of 1985, Pub. L. No. 99-272, 100 Stat. 312, 313 (1986)............... 1

Omnibus Budget Reconciliation Act of 1987,
   Pub. L. No. 100-203, 101 Stat. 1330 (1987) ....................... 1

Patient Protection and Affordable Care Act,
   Pub. L. No. 111-148, § 1556 (March 23, 2010) .................. 1

Black Lung Program Regulations:
   20 C.F.R. Part 725 ............................................................. 12
   20 C.F.R. § 725.309.............................................................. 5
   20 C.F.R. § 725.309(c) ...................................................... 12,18
   20 C.F.R. § 725.309(d) ...................................................... 3
   20 C.F.R. § 725.309(d)(3) .................................................. 3
   20 C.F.R. § 725.310 ........................................................... 12,18

vii

65 Fed. Reg. 79,923 (Dec. 15, 2000) ...................................................... 3

65 Fed. Reg. 79,968 (Dec. 15, 2000) ...................................................... 4

65 Fed. Reg. 79,973 (Dec. 15, 2000) ...................................................... 4


Miscellaneous:

156 Cong. Rec. S2084 (daily ed. March 25, 2010) ................................. 12

Comptroller General of the United States, REPORT TO CONGRESS,
    LEGISLATION AUTHORIZED BENEFITS WITHOUT ADEQUATE
    EVIDENCE OF BLACK LUNG OR DISABILITY (1982) ............................. 11

Comptroller General of the United States, LEGISLATION ALLOWING
    BLACK LUNG BENEFITS TO BE AWARDED WITHOUT ADEQUATE
    EVIDENCE OF DISABILITY (1980) .......................................................... 11

Comptroller General of the United States, REPORT TO THE SENATE
    COMM. ON HUMAN RESOURCES: PROGRAM TO PAY BLACK LUNG
    BENEFITS TO COAL MINERS AND THEIR SURVIVORS-
    IMPROVEMENTS ARE NEEDED (1977) ................................................... 11

BLACK LUNG BENEFITS PROVISIONS OF THE FEDERAL COAL MINE
    HEALTH AND SAFETY ACT: HEARINGS BEFORE THE HOUSE COMM.
    ON EDUCATION AND LABOR, 95th Cong., 1st Sess. (1977) ................ 10

OVERSIGHT OF THE ADMINISTRATION OF THE BLACK LUNG PROGRAM,
    1977: HEARINGS BEFORE THE SUBCOMM. ON LABOR OF THE SENATE
    COMM. ON HUMAN RESOURCES, 95th Cong., 1st Sess. (1977) .......... 10

3 of 28 Edw. III (1335) .......................................................................... 19

Barth, Peter S., THE TRAGEDY OF BLACK LUNG: FEDERAL
    COMPENSATION FOR OCCUPATIONAL DISEASE (1987) ....................... 10

Dig. (Ulpian, Ad Edictum 72) ................................................................ 19

Driver, G.R. & Miles, John C., THE BABYLONIAN LAWS, LEGAL
    COMMENTARY (1952) ........................................................................... 19

The Federalist No. 81 (J. Cooke ed. 1961) ............................................. 14

Hickman, K., "Goodbye Tax Exceptionalism,"
    12 ENGAGE 4 (Nov. 2011) .................................................................. 24

MAGNA CARTA, Cl. 29 (Issued of 1225) .................................................... 19

Moschzisker, Robert von, "Res Judicata,"
   38 YALE L.J. 299 (1929) .................................................... 19

Pharr, C. (trans.), THE THEODOSIAN CODE AND NOVELS AND
   THE SIRMONDIAN CONSTITUTIONS (1952) .......................................... 19

Roby, Henry J., ROMAN PRIVATE LAW IN THE TIMES OF CICERO AND THE
   ANTONINES (1975) (1902)................................................................ 19

<u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

This case presents an important issue of statutory interpretation and constitutional law.  Pursuant to Local Rule 34(a), petitioner respectfully requests oral argument because it believes that the give-and-take of oral argument ay assist the Court in resolving the issues presented in this case.

x

## I.    JURISDICTIONAL STATEMENT

Peabody Coal Company ("Peabody") seeks relief from an award of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-45 ("BLBA").[1]  Joint Appendix ("J.A.") 1.  The administrative law judge ("ALJ") issued that decision on September 29, 2011.  J.A. 14.  Peabody filed an appeal to the Benefits Review Board ("Board"), U.S. Department of Labor ("DOL"), within thirty days of that decision, giving the Board jurisdiction to consider the case under 33 U.S.C. § 921(b), *incorporated by reference into* 30 U.S.C. § 932(a).  The Board affirmed the award on September 26, 2012.  J.A. 9.  That decision was final within the meaning of 33 U.S.C. § 921(c).  This Court docketed Peabody's appeal on November 19, 2012, within sixty days of the Board's decision and thus within the period provided for appeal under 33 U.S.C. § 921(c).  Arthur Hill, the miner involved in this case, last worked as a coal miner in the Commonwealth of Kentucky.   These facts establish this Court's appellate jurisdiction.  As set forth below, however, this appeal raises questions concerning the Board's and therefore this Court's jurisdiction to consider this case.

## II.    ISSUES PRESENTED

A.    Does Section 1556(c) of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010) ("PPACA") violate constitutional principles of separation of powers as articulated in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), according to the Department of Labor's interpretation of the provision?

B.    Does the decision and order of the Benefits Review Board allowing the reopening of a previously litigated and closed black lung claim filed by a survivor of a miner override the principles of finality contained in the

---

[1]    Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 86 Stat. 150, and as further amended by the Black Lung Benefits Reform Act of 1977, 92 Stat. 95, the Black Lung Benefits Revenue Act of 1977, 92 Stat. 11, the Black Lung Benefits Revenue Act of 1981, and the Black Lung Benefits Amendments of 1981, 95 Stat. 1635, Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 312, 313 (1986), Omnibus Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330 (1987), and the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010) ("PPACA").

BLBA, the Longshore Act and the Supreme Court's decisions in *Pittston Coal Group v. Sebben*, 488 U.S. 105 (1988), and *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121 (1997)?

C.    Does the Department of Labor's refusal to apply principles of finality here deprive Peabody of due process of law guaranteed by the Fifth Amendment to the Constitution of the United States?

## III.    STATEMENT OF THE CASE

This case involves Mrs. Hill's effort to obtain survivor's benefits under the Black Lung Benefits Act following Arthur Hill's death in May 2000, Before his death, Mr. Hill had filed for and was awarded benefits on his own claim. Dx. 2. The Benefits Review Board affirmed the ALJ's decision on May 18, 1995, and declined to reconsider that decision. This Court affirmed the Board's decision on August 18, 1997. *Peabody Coal Co. v. Hill* , 123 F.3d 412 (6th Cir. 1997). *See also* Dx. 4. In 1999, Hill was diagnosed with cancer of the larynx, and in February 2000, he was diagnosed with inoperable pancreatic cancer. He died three months later, in May 2000. No autopsy was performed.

A.    <u>Mrs. Hill's First Claim</u>

Mrs. Hill first filed for survivor's benefits on May 23, 2000, two weeks after Mr. Hill's death. J.A. 17 (Dx. 6). The Department of Labor collected the death certificate and medical evidence and obtained an expert opinion that Hill's death was unrelated to his coal mine employment. Mrs. Hill requested a hearing and her claim proceeded to the Department's Office of Administrative Law Judges for trial. That trial took place on November 29, 2001. All parties were represented by counsel and given an opportunity to submit evidence and argument. On February 20, 2002, the ALJ denied Mrs. Hill's claim. J.A. 19 (Dx. 1-52). This ALJ concluded that Hill's death was not due to pneumoconiosis and that pneumoconiosis did not substantially contribute to or hasten his death.

Mrs. Hill filed a timely appeal to the Benefits Review Board, which affirmed the ALJ's decision on January 28, 2003. J.A. 34 (Dx. 1-18). Dissatisfied with that

result, Mrs. Hill then filed an appeal to this Court.  On April 7, 2004, this Court affirmed the Benefits Review Board's decision.  J.A. 40 (Dx. 1-4).  The Court reviewed the medical evidence and found that the ALJ had sufficient evidence to find that pneumoconiosis did not cause or hasten Hill's death due to pancreatic cancer.  Other than an unexplained notation on Hill's death certificate, no doctor found any connection between Hill's death and his black lung disease.  J.A. 42-45, 46 (Dx. 1-4; Dx. 7).  Mrs. Hill took no further action and on June 1, 2004, the Court's mandate issued.  J.A. 45.

B.   Mrs. Hill's Second Claim

Six and one-half years after the denial of her first claim, on January 13, 2011, Mrs. Hill filed another application for benefits.  J.A. 7 (Dx. 9).  The Department of Labor's regulations address such additional survivors' claims and the effects of a prior denial of benefits.  Those rules define a claim, like this one, filed more than one year after the effective date of a final order denying a previously filed claim as "a subsequent claim for benefits."  20 C.F.R. § 725.309(d).  DOL's rules enforce principles of res judicata with respect to subsequent claims.  The regulation states:

> A subsequent claim filed by a surviving spouse, child, parent, brother, or sister shall be denied unless the applicable conditions of entitlement in such claim include at least one condition unrelated to the miner's physical condition at the time of his death.

*Id.*, § 725.309(d)(3).  In its preamble to these regulations, the Department explained that the provision allowing subsequent claims by miners was justified because some forms of pneumoconiosis could be latent or progressive.  65 Fed. Reg. 79923 (Dec. 15, 2000).  In a subsequent survivor's claim, however, the miner's physical condition cannot change, so a new filing always will be an attempt to relitigate the prior claim.  As the Secretary explained:

> Where a previous survivor's claim was denied solely on the basis that the survivor did not prove that the miner died due to pneumoconiosis, an element not subject to change, the survivor

3

> may be barred from litigating another claim filed more than one year after the denial of the first one.

65 Fed. Reg. 79973 (col. a).    The Secretary provided an example of when a subsequent survivor's claim must be denied:

> For example, if the earlier claim was denied solely because the miner did not die due to pneumoconiosis, the regulation would require the denial of any additional claim as well.

*Id.* at 79968 (col. c). Thus, according to the Secretary, where a survivor's claim is denied because the claimant has remarried, a subsequent claim may be considered on the merits, but where the survivor's claim is denied solely on the merits, a subsequent survivor's claim must be denied. *Id.* The Department has no statutory authority to allow a new filing in any claim.

Despite the unambiguous language of section 725.309(d), reinforced by the discussion in the preamble to the amended rules, DOL not only entertained Mrs. Hill's subsequent claim, but proposed an award of benefits. The Department relied on PPACA, which revived a provision of the BLBA (30 U.S.C. § 932(*l*)), that permitted an award of benefits to survivors of miners who had been deemed eligible for benefits at the time of their death whether or not pneumoconiosis was the cause of death. These amendments were to apply only to claims filed after January 1, 2005, and pending on or after March 23, 2010. PPACA, § 1556(c). Congress did not direct application of 30 U.S.C. § 932(*l*) to claims that had been previously filed and litigated to a final decision by the Department of Labor, let alone an Article III court.[2]

---

[2]  Section 1556 states:

> (a)    Rebuttable Presumption.– Section 411(c)(4) of the Black Lung Benefits Act (30 U.S.C. 921(c)(4)) is amended by striking the last sentence.
>
> (b)    Continuation Of Benefits.– Section 422(l) of the Black Lung Benefits Act (30 U.S.C. 932(l)) is amended by striking ", except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981".
>
> (c)    Effective Date.– The amendments made by this section shall apply with respect to claims filed under part B or part C of the Black Lung Benefits Act

The Department ignored Mrs. Hill's previously denied claim and this Court's final decision. It did not mention that Mrs. Hill had previously filed for benefits under the BLBA. Nor did it mention that her claim had been finally denied. Dx. 16. And, the Department did not explain why the prohibition against subsequent survivors' claims in 20 C.F.R. § 725.309 and the Supreme Court's decision in *Pittston Coal Group v. Sebben*, 488 U.S. 105, applying ordinary rules of res judicata in black lung cases, did not bar Mrs. Hill's second claim here. For these reasons, Peabody contested Mrs. Hill's entitlement. Dx. 19. The case then proceeded to the Office of Administrative Law Judges. Dx. 24.

On September 29, 2011, an ALJ issued a decision and order awarding benefits notwithstanding the several prohibitions against successive survivors' claims.[3] J.A. 14. The Benefits Review Board affirmed this decision on September 26, 2012. J.A. 9. The Board declared that retroactive application of 30 U.S.C. § 932(*l*) did not violate Peabody's right to due process or constitute an unlawful taking (although Peabody did not argue that it did). The Board also disagreed that entitlement under PPACA was tied to the prior denied claim. J.A. 11: BRB Decision Order at 3. According to the Board: "The terms of 20 C.F.R. § 725.309, which require that a subsequent claim be denied unless a change in an applicable condition of entitlement is established, do not preclude a survivor's subsequent claim, filed within the time limitations set forth in Section 1556 of the PPACA, as entitlement thereunder is not tied to relitigation of the prior finding that claimant did not prove that the miner's death was not due to pneumoconiosis." *Id.* Finally, the Board agreed with the Director that the ALJ erred

---

(30 U.S.C. 921 *et seq.*, 931 *et seq.*) after January 1, 2005, that are pending on or after the date of enactment of this Act.

[3]     The ALJ stated that she had issued an order directing the parties to show cause why benefits should not be awarded under Section 932(*l*), but none of the parties responded. J.A. 14A: ALJ D&O at 2. Peabody's counsel did not receive such an order.

in awarding benefits as of the date of Hill's death, notwithstanding the language of section 932(*l*). Only here did the Board mention this Court's prior decision and mandate. The Board ordered that benefits could not begin until July 1, 2004, "the first day of the month after the month in which the prior denial of benefits became final." J.A. 12: BRB Decision & Order at 4.

Peabody's timely appeal to this Court followed. J.A. 1.

## IV.    STATEMENT OF FACTS

The relevant facts are set forth above in the Statement of the Case.

## V.    SUMMARY OF ARGUMENT

The Framers of our system of government believed that the separation of legislative, executive and judicial powers was essential to prevent tyranny. *See* Federalist 47 (Madison). To cabin the power of the legislature and maintain judicial independence, the Framers prohibited Congress from enacting legislation that reopens final judgments of an Article III court. *See* Federal 81 (Hamilton) ("A legislature, without exceeding its province, cannot reverse a determination once made in a particular case; though it may prescribe a new rule for future cases."). In *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), the Supreme Court reaffirmed the view that by reopening a final judgment, Congress exercises judicial power and thereby violates the vesting clause of Article III and intrudes on the judiciary's function. *Id.* at 217-18 ("We conclude that in §27A(b) Congress has exceeded its authority by requiring the federal courts to exercise '[t]he judicial Power of the United States,' U.S. Const., Art. III, § 1, in a manner repugnant to the test, structure, and traditions of Article III."). In the BLBA, Congress did not intend to reopen cases like Mrs. Hill's, and there is no authority to the contrary.

Despite this, the Department of Labor's interpretation of PPACA to reopen the final judgment of this Court renders section 1556 unconstitutional and violates the separation of powers doctrine. The ALJ and the Benefits Review Board have

sanctioned an award of benefits to Mrs. Hill when this Court, in a final decision, held that Mrs. Hill was not entitled to benefits. That act exceeds Congress's--and certainly DOL's--powers. *See Plaut*, 514 U.S. at 225 ("When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.' … Our decisions … have uniformly provided fair warning that such an act exceeds the powers of Congress").

There is no doubt that Section 1556 of PPACA is, in part, retroactive legislation. And, there is no dispute that Congress can enact legislation that has retroactive effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). But any such legislation, no matter how well-intended, must be applied only to judgments still on appeal that were rendered before the law was enacted; it may not be applied to judgments that are final. "Having achieved finality, … a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law application *to that very case* was something other than what the courts said it was." *Plaut*, 514 U.S. at 227.

The Department's interpretation runs afoul of core principles of law in addition to violating principles of separation of powers. Finality of judgments--and an end to litigation--are core principles of law. As the Supreme Court put it:

> There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, *interest rei puplicae, ut sit finis litium* [it concerns the state that there be an end to lawsuits], and *nemo debet bis vexari pro una et eadam causea* [no one should be vexed twice with the same cause].

*United States v. Throckmorton*, 98 U.S. 61, 65 (1878) (translations supplied). These principles apply equally to administrative and judicial adjudications, including black lung claims adjudications. Mrs. Hill's claim was finally denied on the merits, after a full and fair adjudication and appeal, because the evidence failed to establish that

Hill's death was due to black lung disease. The question presented in this case is whether the amendments to the Black Lung Benefits Act in PPACA may be construed to permit the re-opening of Mrs. Hill's claim in the absence of any express exemption from principles of finality.

There is no legal authority that allows the reconsideration of Mrs. Hill's claim because Congress changed the legal standards for eligibility. No statutory provision allows this result. And there is no indication of such an intent in the legislative history added post-enactment of PPACA, to the extent that such post-hoc pronouncements are entitled to any weight. The ALJ recognized that if section 725.309 applied to Mrs. Hill's claim, she was not entitled to benefits because it barred any subsequent claim. J.A. 15: ALJ D&O at 3. Instead, the ALJ declared that the provisions of section 725.309 did not apply "because under Section 422(l), the Claimant is not required to file a claim in order to receive benefits." J.A. 15A: ALJ D&O at 4. The ALJ announced that Mrs. Hill was entitled to survivor's benefits under PPACA and that they should begin on the effective date of section 422(l), *i.e.*, March 23, 2010. *Id.* The ALJ cited no authority for this view and there is none. Mrs. Hill's claim is barred by common law and jurisprudential rules of res judicata which are strongly presumed to be incorporated in all federal statutes absent express statutory authority to the contrary.

The denial of the benefit of finality violates employers' right to both procedural and substantive due process of law and that deprivation also prohibits an award in this case. Mrs. Hill had a full and fair adjudication of her claim. In the absence of express authorization to reconsider black lung claims that have been previously litigated and are finally denied, there is no basis to reopen her claim. This Court should enforce the finality of the prior decision in this case.

## VI.    ARGUMENT

### A.    Standard of Review

This case requires the Court to consider questions of law. On such questions, the Court considers a case *de novo*. *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003); *Peabody Coal Co. v. Greer*, 62 F.3d 801, 804 (6th Cir. 1995) ("This Court has plenary authority to review the Board's legal conclusions.") (citing *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1119 (6th Cir. 1984)). That plenary review extends to issues relating to the application of res judicata. *See Arch of Kentucky v. Director, OWCP* [*Hatfield*], 556 F.3d 472, 477-79 (6th Cir. 2009).

Although this is the standard of review prescribed by statute, in *Hatfield* and other cases, this Court has suggested that a different approach applies to black lung adjudications based on the remedial nature of the BLBA. *See, Hatfield*, 556 F.3d at 482; *Grundy Mining Co. v. Flynn*, 353 F.3d 467, 476 (6th Cir. 2003). An approach favoring claimants lacks statutory authority either in the BLBA or the Administrative Procedure Act, 5 U.S.C. §§ 551-59, and is prohibited by *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). The APA requires that all parties be treated equally. 5 U.S.C. § 559. And, the Supreme Court has rejected the notion that "the statute at hand should be liberally construed to achieve its purpose," terming the argument as "that last redoubt of losing causes." *Director, OWCP v. Newport News Shipbldg & Dry Dock Co.*, 514 U.S. 122, 135 (1995). *Accord Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 635 (1983); *Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 258, 268, 279 (1980). *See also Kurcana v. Holder*, 558 U.S. __ (2010), ("[N]o law pursues its purpose at all costs, and … the textual limitations upon a law's scope are not less a part of hits 'purpose' than its substantive authorizations.") (quoting *Rapanos v. United States*, 547 U.S. 715, 752 (2006)). The remedial or liberal purpose of the statute is not a proper lens through which to view this case. In this case, there is no possible basis for abrogating the separation of powers doctrine and no

statutory authorization for the waiver of finality. That should be the end of the inquiry. If a "liberal" approach leads to a different result, it is impermissible for the reasons articulated by the Supreme Court. *Id.* Reversal is required in this case because the agency decision has no valid basis in law.

B.    The Constitutional Doctrine of Separation of Powers Precludes Reopening or Reconsidering Mrs. Hill's Entitlement to Black Lung Benefits

1. The History of PPACA's Amendments to the BLBA

When it was initially enacted, the black lung program was intended to provide the maximum benefits to miners and their families. *See generally*, Peter S. Barth, THE TRAGEDY OF BLACK LUNG: FEDERAL COMPENSATION FOR OCCUPATIONAL DISEASE (1987) ("Barth"). Two of the provisions of the BLBA embodied this spirit of generosity: (1) Section 422(*l*), 30 U.S.C. § 932(*l*), which required the payment of automatic benefits to survivors of miners who were receiving benefits at the time of their death, and (2) section 411(c)(4), 30 U.S.C. § 921(c)(4), which rebuttably presumed entitlement if the miner worked underground or in comparable conditions for fifteen or more years, and had a totally disabling respiratory or pulmonary impairment.

In response to criticism that the program was out of control, unjustifiably punitive to mine operators who were being held financially responsible for circumstances they did not cause, and that the eligibility criteria were medically and scientifically unsound,[4] Congress asked the U.S. Comptroller General to

---

[4]    BLACK LUNG BENEFITS PROVISIONS OF THE FEDERAL COAL MINE HEALTH AND SAFETY ACT: HEARINGS BEFORE THE HOUSE COMM. ON EDUCATION AND LABOR, 95th Cong., 1st Sess. 274-75 (1977) (testimony of Dr. Harold I. Passes, Former Acting Chief Medical Officer, Bureau of Hearings and Appeals, SSA), *id.* at 259-60 (statement of Hans Will, M.D.) ("1977 House Hearings"); OVERSIGHT OF THE ADMINISTRATION OF THE BLACK LUNG PROGRAM, 1977: HEARINGS BEFORE THE SUBCOMM. ON LABOR OF THE SENATE COMM. ON HUMAN RESOURCES, 95th Cong., 1st Sess. 193-95 (1977) (testimony of Dr. Herbert Blumenfeld, Chief, Medical

investigate. The General Accounting Office ("GAO") (now called the General Accountability Office) investigated the program and reported its findings to Congress in 1977, 1980 and 1981. It found that in 88.5% of black lung benefits claims awarded by the Social Security Administration and 84% of claims awarded by DOL, the evidence failed to document disability or death due to black lung disease.[5]

In response, Congress amended the BLBA in 1981. Black Lung Benefits Revenue Act of 1981 and Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, 95 Stat. 1635 (1981). The 1981 amendments repealed the automatic survivors' entitlement provision in Section 422(*l*) and the 15-year presumption in section 411(c)(4). *Id.* §§ 202(b)(1); 203(a)(6). These changes, among others, substantially reduced the potential liability of mine owners and insurers for thousands of claims considered non-meritorious by Congress.

In Section 1556(b) of PPACA, however, Congress revived the automatic entitlement provision for certain claims. Section 1556(b) provides:

> Section 422(*l*) of the Black Lung Benefits (30 U.S.C. § 932(*l*)) is amended by striking ", except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981".

Section 1556(b). Pursuant to Section 1556(c),

> The amendments made by this section shall apply with respect to claims filed under part B or part C of the Black Lung Benefits Act (30 U.S.C. 921 et seq., 931 et seq.) after January 1, 2005, that are pending on or after the date of enactment of this Act.

---

Consulting Staff, Bureau of Disability Insurance, SSA), *id.* at 254, 241 (testimony of Donald Elisburg, Assistant Secretary of Labor) ("1977 OVERSIGHT HEARINGS").

[5]    Comptroller General of the United States, REPORT TO CONGRESS. LEGISLATION AUTHORIZED BENEFITS WITHOUT ADEQUATE EVIDENCE OF BLACK LUNG OR DISABILITY at ii (1982); Comptroller General of the United States, LEGISLATION ALLOWING BLACK LUNG BENEFITS TO BE AWARDED WITHOUT ADEQUATE EVIDENCE OF DISABILITY (1980); Comptroller General of the United States, REPORT TO THE SENATE COMM. ON HUMAN RESOURCES: PROGRAM TO PAY BLACK LUNG BENEFITS TO COAL MINERS AND THEIR SURVIVORS-IMPROVEMENTS ARE NEEDED 43-47, 51-52 (1977).

*Id.*, § 1556(c).

There is no contemporary legislative record to support this amendment. It was never discussed in the public debate over health care reform that culminated in the enactment of PPACA. It was not the subject of hearings or testimony. Thus there is no record that new science justified a change in the law and no record that its significance was reported at all to either house of Congress. Except for the most knowledgeable and diligent reader, no one would know what Section 1556(b) accomplished or what it meant.

Post-enactment, however, Senator Byrd had material inserted into the Congressional Record saying what the provision was intended to do:

> It is clear that the section will apply to all claims that will be filed henceforth, including many claims filed by miners whose prior claims were denied, <u>or by widows who never filed for benefits following the death of a husband</u>. But section 1556 will also benefit all of the claimants who have recently filed a claim, and are awaiting or appealing a decision or order, or who are in the midst of trying to determine whether to seek a modification of a recent order. Section 1556 applies immediately to all pending claims, including claims that were finally awarded or denied prior to the date of enactment of the Patient Protection and Affordable Care Act, for which the claimant seeks to modify a denial, or for which other actions are taken in order to modify an award or denial, in accordance with 20 CFR 725.309(c) or 725.310. Section 1556 applies even if a final order is modified, or actions are taken to bring about the modification of an order, subsequent to the date of enactment of the Patient Protection and Affordable Care Act, in accordance with the sections of Part 725 that I mentioned. I look forward to working to ensure that claimants get a fair shake as they try to gain access to these benefits that have been so hard won.

156 Cong. Rec. S2084 (daily ed. March 25, 2010) (emphasis supplied). Generally, post-hoc pronouncements are not entitled to any weight. *See Pittston Coal Group v. Sebben*, 488 U.S. at 118-19 ("The Secretary and private petitioners cite favorable post[-]enactment statements by key sponsors of the BLBRA. Since such statements cannot possibly have informed the vote of the legislators who earlier enacted the

law, there is no more basis for considering them than there is to conduct post[-] enactment polls of the original legislators.").[6]

Here, though, Senator Byrd's comments repudiate DOL's theory. Neither Senator's Byrd's comments nor the language of PPACA itself suggests an intention to overcome provisions of finality either in common law, in the BLBA or in the regulations implementing the BLBA for claims that were finally adjudicated. In fact, the highlighted language in Senator Byrd's comments coupled with his reference to 20 C.F.R. § 725.309(c) rather than 725.309(d) show that the changes in law were not intended to apply to previously denied and finally closed survivors' claims. Section 725.309(c) provides that if a claimant files a claim within one year after the effective date of an otherwise final order denying a previous claim by that claimant, the later claim shall be considered a request for modification and processed and adjudicated under section 725.310.[7] In contrast, subsequent claims (*i.e.*, claims filed more than one year after the effective date of an order denying a previous claim by that claimant) are addressed in section 725.309(d) which requires the denial of such claims where the proof failed to establish that the miner died due to pneumoconiosis in the prior claim. There is no contrary authority on these points.

---

[6]     In *B&G Constr. Co. v. Director, OWCP* [*Campbell*], 662 F.3d 233 (3d Cir. 2011), the court upheld the general constitutionality of Section 1556 by giving some weight to the legislative history, as requested by the Director. On the issue presented here, the Director did not mention the legislative history, apparently because it is contrary to the Director's position. The Department's selective use of this authority, for whatever it is worth, is inappropriate for a federal agency.

[7]     In 33 U.S.C. § 922, *incorporated by reference into* 30 U.S.C. § 932(a), Congress provided a limited exception to finality in cases in which a party requested modification of a decision either granting or denying benefits provided that request was made within one year of the denial of a claim or the last payment of benefits. DOL has implemented this provision in 20 C.F.R. § 725.310. There is no dispute that Mrs. Hill filed her second claim long after the one year period permitted for modification. Modification was her only statutory remedy.

2.    <u>Congress Lacks Authority to Reopen this Court's Final Decision</u>

Article III of the Constitution established a "judicial department" charged with "say[ing] what the law is" by deciding specific cases and controversies, subject to review only by superior courts. *Marbury v. Madison*, 1 Cranch 137, 177 (1803). By this method, the Framers intended to prohibit legislative interference with private law judgments of the courts. Thus as Hamilton wrote: "A legislature without exceeding its province cannot reverse a determination once made, in a particular case; though it may prescribe a new rule for future cases." The Federalist No. 81, p. 545 (J. Cooke ed. 1961). This separation of powers between the executive, legislative and judicial departments has been well understood and accepted since the mid-19th century. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. at 224-27 (discussing cases). And, the Supreme Court's decisions, beginning with *Hayburn's Case*, 2 Dall. 409 (1792), have uniformly provided "fair warning" that "[w]hen retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case" and in so doing, "exceeds the powers of Congress." *Plaut*, 514 U.S. at 225, quoting The Federalist No. 81, at 545.

That is not to say that Congress cannot pass retroactive legislation. "When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut*, 514 U.S. at 226, citing *United States v. Schooner Peggy*, 1 Cranch 103 (1801); *Landgraf v. USI Film Prods.*, 511 U,.S. at 273-80. But the Supreme Court has drawn a distinction between judgments from which all appeals have been forgone or completed (*i.e.*, final judgments) and judgments that remain on appeal or subject to appeal. "Having achieved finality,… a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not

14

declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." *Plaut*, 514 U.S. at 227.

Here, the Benefits Review Board's interpretation of PPACA, Section 1556 violates these important principles. The Board has deprived this Court's decision *in this very case* of conclusive effect. Whereas this Court, in a final decision that was no longer subject to reopening or review by any higher court, decided that Mrs. Hill was not entitled to black lung benefits, the Board, in its current decision, has decided that she is so entitled. No matter how good the reason, the separation-of-powers prohibition is violated under these circumstances.

It is no good saying, as the Director suggests, that Mrs. Hill now is entitled to benefits because PPACA created new conditions of entitlement. *See Letter Response of Director, OWCP* (April 30, 2012) at 2 n.2. The Supreme Court rejected this approach in *Plaut*. There, the petitioners argued that since appellate courts must apply "new law" to pending cases, they should apply that "new" law to finally adjudicated cases as well. The Court explained:

> Finality of a legal judgment is determined by statute, just as entitlement to a government benefit is a statutory creation; but that no more deprives the former of its constitutional significance for separation-of-powers analysis than it deprives the latter of its significance for due process purposes....

*Plaut*, 514 U.S. at 227.

The Supreme Court also rejected the notion that the type of statutory change makes a difference to the analysis. In *Plaut*, the petitioners claimed that the change in law at issue, extending a statute of limitations under the Securities Exchange Act of 1934, distinguished their case from a case dismissed on the merits. The Supreme Court found otherwise:

> First, there is the fact that the length and indeed even the very existence of a statute of limitations upon a federal cause of action is entirely subject to congressional control. But virtually *all* of the reasons why a final judgment on the merits is rendered on a federal claim are subject to congressional control. Congress

15

can eliminate, for example, a particular element of a cause of action that plaintiffs have found it difficult to establish; or an evidentiary rule that has often excluded essential testimony; or a rule of offsetting wrong (such as contributory negligence) that has often prevented recovery.    To distinguish statutes of limitations on the ground that they are mere creature of Congress is to distinguish them not at all.    The second supposedly distinguishing characteristic of a statute of limitations is that it can be extended, without violating the Due Process Clause, after the cause of action arose and even after the statue itself has expired. …   But that also does not set statutes of limitations apart.   To mention only one other broad category of judgment-producing legal rule: Rules of pleading and proof can similarly be altered after the cause of action arises, … and even, if the statute clearly so requires, after they have been applied in a case but before final judgment has been entered. Petitioners' principle would therefore lead to the conclusion that final judgments rendered on the basis of a stringent (or, alternatively, liberal) rule of pleading or proof may be set aside for retrial under a new liberal (or, alternatively, stringent) rule of pleading or proof.   This alone provides massive scope for undoing final judgments and would substantially subvert the doctrine of separation of powers.

*Plaut*, 514 U.S. at 228-29.

In *Plaut*, the Court observed that it knew of no other instance in which Congress attempted to set aside the final judgment of an Article III court by retroactive legislation except where Congress waived res judicata effect of a prior judgment in the government's favor on a claim against the United States.  *Plaut*, 514 U.S. at 230, citing *United States v. Sioux Nation*, 448 U.S. 371 (1980).  *But see* 30 U.S.C. § 945 (directing the Secretary of Labor to review each claim denied on or before March 1, 1978, or pending on that date under amended eligibility criteria), *repealed*, Black Lung Consolidation of Administrative Responsibility Act, P.L. 107-275, § 4 (107th Cong. 2d Sess. Nov. 2, 2002).[8]  The Supreme Court found "good reason" for the absence of any such legislation by Congress.  "The Constitution's separation of legislative and judicial powers denies it the authority to do so."  *Plaut*, 514 U.,S. at 240.  The Court found that such legislation "is unconstitutional to the

---

[8]     Even then, Congress directed that liability for previously closed and denied claims reopened pursuant to this provision would be borne by the Black Lung Disability Trust Fund, rather than private employers.  30 U.S.C. § 932(c), (j)(3).

extent that it requires federal courts to reopen final judgments entered before its enactment." *Id.* The same result is required with respect to Section 1556 of PPACA.

The Department of Labor's interpretation of section 1556 conflicts, on its face, with constitutional doctrine. There is no express authority in either the enactment or its post-enactment history to support the theory that Congress in tended to reverse prior judicial decisions in this or any similar case or that Congress in any way thought that it was taking on a matter of constitutional significance by changing the eligibility criteria for survivors under the BLBA. The Department no doubt will argue that without ever saying so or even suggesting the possibility, in enacting section 1556, Congress intended to (1) amend the separation of powers doctrine or (2) repeal ordinary principles of finality and res judicata that the Supreme Court unanimously found applicable to all black lung claims. *Pittston Coal Group v. Sebben*, 488 U.S. 105. That Congress would enact such momentous and extraordinary propositions without saying that it was doing so is both preposterous and unprecedented in law or history. The theory advanced by the Department is disfavored as a rule of construction. An interpretation that avoids constitutional conflict is always preferable to an interpretation that raises such a conflict, especially, as is the case here, where the interpretation is not compelled by anything Congress wrote or said. Many Supreme Court decisions have upheld this "canon of constitutional avoidance in statutory interpretation." *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail ...."); *Machinists v. Street*, 367 U.S. 740, 749-50 (1961) (noting that "if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided"). The Department has offered no good or

valid reason to depart from clear constitutional doctrine and this Court should reverse the decision of the Benefits Review Board for this reason alone.

> 3.    Even Without a Separation of Powers Analysis, No Exception to Finality Can Be Inferred from Congressional Silence in Section 1556 of PPACA

The Supreme Court has held that ordinary principles of finality apply in black lung claims as they do in all other litigation. *Pittston Coal Group v. Sebben*, 488 U.S. at 122. According to the Court, "there is not even a colorable basis for the contention that Congress has imposed a duty to reconsider finally determined claims." *Id.* The setting addressed in *Pittston* is almost identical to the case here.

The BLBA contains only one exception to finality. Claimants or employers may readjudicate a claim based on changed conditions or a mistake in a determination of fact provided the request is made within one year of a prior denial. 33 U.S.C. § 922, *incorporated by reference into* 30 U.S.C. § 932(a). Otherwise "a losing claimant loses for all time after one year from the denial or termination of benefits." *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. at 129. Mrs Hill filed her second claim more than one year after the denial of her prior claim, so the exception to finality embodied in Section 22, as implemented by 20 C.F.R. §§ 725.310 and 725.309(c) was not available.

In the absence of any other exception to finality, the Supreme Court has held that there is a "strong presumption" that well-established common law principles of res judicata and issue preclusion apply in federal statutory adjudications as they are applied in all other cases. According to the Court:

> Congress is understood to legislate against a background of common law adjudicatory principles.... Thus, where a common law principle is well-established, as are the rules of preclusion, ... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.

*Astoria Fed. S & L Ass'n v. Solimino*, 501 U.S. 104, 102-108 (1991)" (citations omitted)).  *See also Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981) (Congress is familiar with common law principles and that these principles are embedded in federal statutes absent express intent to the contrary; statutes "cannot be understood in a historical vacuum."); *United States v. Turley*, 357 U.S. 407, 411 (1957) (if a federal statute does not define a common law term of established meaning, the term is construed according to its common-law meaning); *United States v. Texas*, 507 U.S. 529, 534 (1993) (a statute will not be read to abrogate a common-law principle unless the statute does so expressly).

The principle "that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise" is a long favored application of the common law doctrine of finality.  *See Solimino*, 501 U.S. at 107.[9]  These principles apply to judicial and administrative adjudications alike.  *See University of Tennessee v. Elliott*, 478 U.S. 788 (1986) (collecting authorities).  The Court recognized that

---

[9]    There are few principles of law that are more deeply rooted and central to notions of fair government than principles of finality.  *See e.g.*, G.R. Driver & John C. Miles, THE BABYLONIAN LAWS, LEGAL COMMENTARY 74 (1952); Roby, Henry J., ROMAN PRIVATE LAW IN THE TIMES OF CICERO AND THE ANTONINES (1975) (1902); Dig. 44.2.4 (Ulpian, Ad Edictum 72) (discussing "the defense of *res judicata*" or *rei judicatae exceptio*).  *See also id.* 44.2.7 (including both issue and claim preclusion under the general preclusion defense); *see also* C. Pharr (trans.), THE THEODOSIAN CODE AND NOVELS AND THE SIRMONDIAN CONSTITUTION 4.14.1 (1952); 3 of 28 Edw. III (1335); MAGNA CARTA, Cl. 29 (Issue of 1225); Robert von Moschzisker, "Res Judicata," 38 YALE L.J. 299, 299 (1929) ("the whole doctrine bears a close resemblance to the *exceptio rei judicatae* of the Roman law").  This Court recently mocked this authority, preferring instead reference to more "modern jurisprudence" that permits an exception to finality based on the theory that black lung disease is latent and progressive.  *See Buck Creek Coal Co. v. Sexton*, __ F.3d __, slip op. at 5 (6th Cir. 2012).  Where, as here, the case involves a refiled survivor's claim, latency and progressivity cannot justify such an approach.  The "modern jurisprudence" from this Court and others rejects it.  *See supra* at 20 (citing cases).

enforcing general principles of collateral estoppel and repose fosters "both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources." *Univ. of Tennessee v. Elliott*, 478 U.S. at 797-98, citing *United States v. Utah Constr. and Mining Co.*, 384 U.S. 394, 421-22 (1966), *Kremer v. Chemical Constr.*, 456 U.S. 461 (1982), *Allen v. McCurry*, 449 U.S. 90 (1980). *See also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines [claim preclusion and issue preclusion] protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.') (quoting *Montana v. United States*, 440 U.S. 147, 153-154 (1979)). This Court's jurisprudence follows these principles. *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).

These well-established principles of common law principles do not permit the relitigation of claims like this one, that have been previously litigated and decided and are no longer subject to appeal. Every court that has considered this issue has held that such a subsequent survivor's claim must be denied. *See Farmer v. Director, OWCP*, 2006 WL 1737476 (4th Cir. June 19, 2006) (unpublished); *Coleman v. Director, OWCP*, 345 F.3d 861 (11th Cir. 2003); *Meade v. National Mines Corp.*, 2002 WL 31096746 (6th Cir. 2002) (unpublished); *Bishop v. Shelby Fuels Corp.*, 2002 WL 818315 (6th Cir. 2002) (unpublished); *Kendrick v. BethEnergy Mines, Inc.*, 2002 WL 187401 (6th Cir. 2002) (unpublished); *Powell v. Langley & Morgan Corp.*, 2001 WL 1563929 (6th Cir. 2001). The Board's law accords. *See, e.g., Boden v. G. M & W Coal Co., Inc.*, 23 Black Lung Rep. 1-38 (Ben. Rev. Bd. 2004); *Mack v. Matoaka Kitchekan Fuel*, 12 Black Lung Rep. 1-197 (Ben. Rev. Bd. 1989); *Watts v. Peabody Coal Co.*, 17 Black Lung Rep. 1-68 (Ben. Rev. Bd. 1992).

This case provides no reason to depart from those holdings.  In the absence of explicit Congressional direction to reopen previously denied and closed claims, traditional principles of res judicata apply even if Congress later changes the law. "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  *See also Allen v. McCurry*, 449 U.S. at 94.  As the Supreme Court has explained:

> the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." …  In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions.

*Landgraf v. USI Film Prods.*, 511 U.S. at 265-66 (footnotes and citations omitted).

No law authorizes a different treatment for black lung adjudications.  In the past, when Congress has intended to overcome principles of finality, it has said so with specific language.  Thus, in 1978, when Congress intended DOL to review claims under new or different standards, it stated:

> The Secretary of Labor shall review each claim which has been denied under this part (or under section 925 of this title) on or before March 1, 1978, and each claim which is pending under this part … on such date, taking into account the amendments made to this part by the Black Lung Benefits Reform Act of 1977. The Secretary shall approve any such claim forthwith if the provisions of this part, as so amended, require that approval, and the Secretary shall immediately make or otherwise provide for the payment of the claim in accordance with this part.

30 U.S.C. § 945(b)(1).  Congress specifically limited the retroactive effect for those cases:

> Any individual whose claim is approved pursuant to this section
> shall be awarded benefits on a retroactive basis for a period with
> begins no earlier than January 1, 1974.

*Id.* § 945(c).  And, as noted above, it also specifically relieved private employers and

insurers of liability for any claim so reopened and awarded pursuant to this provision.

30 U.S.C. § 932(c), (j)(3).  PPACA contains no similar language with respect to prior

denied claims that have been closed for more than one year.  The only conclusion then

is that Congress did not intend to create an exception from principles of finality for

refiled survivors' claims following a final prior denial.

This is the conclusion the Supreme Court reached when it rejected a claimant's

argument that DOL was required to readjudicate claims decided under "erroneous"

standards (the standards in effect prior to 1978) but not directly appealed to the courts

within the time prescribed.  *Pittston Coal Group v. Sebben*, 488 U.S. 105.  The

Supreme Court explained:

> With respect to claims filed between the effective date of the
> BLBRA and that of the permanent Labor regulations, and with
> respect to claims filed before the effective date of the BLBRA but
> not yet adjudicated at that time, there is not even a colorable
> basis for the contention that Congress has imposed a duty to
> reconsider finally determined claims. And with respect to the
> already adjudicated pre-BLBRA claims that 30 U.S.C. § 945
> required the Secretary to readjudicate under the new, interim
> Labor regulation, a basis for reopening can be found only if one
> interprets § 945 to override the principle of res judicata not just
> once but perpetually, requiring readjudication and re-
> readjudication (despite the normal rules of finality) until the
> Secretary finally gets it right. But there is no more reason to
> interpret a command to readjudicate pursuant to a certain
> standard as permitting perpetual reopening, until the Secretary
> gets it right, than there is to interpret a command to adjudicate
> in this fashion. That is to say, one could as plausibly contend
> that every statutory requirement that adjudication be conducted
> pursuant to a particular standard permits reopening until that
> requirement is complied with. This is not the way the law works.

*Sebben*, 488 U.S. at 122.  Thus if a claimant like Mrs. Hill litigates a claim under the

BLBA and loses, she can challenge that determination by seeking judicial review.  If

instead, she chooses to accept the decision, but challenge it in some later proceeding,

she is "in no different position from any claimant who seeks to avoid the bar of res

judicata on the ground that the decision was wrong." *Id.* at 123. Since no such exempting language exists, principles of res judicata must be applied to Mrs. Hill's claim. *Pittston Coal Group* is controlling here and is in no way abrogated by Section 1556.

There is no support, in fact or in the law, for the notion that a change in legal standards somehow manufactures a new cause of action that may be pursued in contravention of ordinary principles of finality. The Department's view is unprecedented and unsupported. All relevant authority mandates the application of res judicata in this case.

C.    The Denial of Finality Here Deprives Peabody of Due Process

The ALJ and Board dispensed with finality in this case by refusing to give preclusive effect to the prior, final decision in Mrs. Hill's prior claim. There is no other kind of proceeding that denies a party any possible benefit of an end to litigation where, as here, nothing new occurred. While Congress may have the authority to allow closed claims to be reopened or relitigated, DOL does not. And Congress did not direct DOL to dispense with finality in PPACA. No provision of the BLBA even arguably allows a losing claimant to file a new claim based upon the same facts giving rise to the earlier cause of action.

The agency's repeal of principles of finality here violates Peabody's due process rights. There is no doubt that principles of finality are components of procedural, if not, substantive due process and that all parties to litigation are entitled to expect that all branches of government will treat dispositive findings in prior litigation as dispositive for all time. More recently, the Supreme Court confirmed that it too is bound by its prior decisions on the same issue in a later claim. *See United States v. Home Concrete & Supply, LLC*, 566 U.S. __, 132 S. Ct. 1836 (2012). There is no exception for black lung cases. *See Mayo Found. for Med. Ed. & Research v. United States*, 562 U.S. __, 131 S.Ct. 704, 713 (2011) ("[W]e are

23

not inclined to carve out an approach to administrative review good for tax law only.... To the contrary, we have expressly '[r]ecognized the importance of maintaining a uniform approach to judicial review of administrative action.'", quoting *Dickinson v. Zurko*, 527 U.S. 150, 154 (1999)). *See also* Hickman, K., "Goodbye Tax Exceptionalism," 12 ENGAGE 4 (Nov. 2011). The Department's approach to finality is antithetical to principles of due process and to our system for dispute resolution.[10] In the absence of a single word of statutory text that supports this departure from the normal rules of finality, the Court should either vacate the Board's decision because it offends core principles of due process or dismiss Peabody as a responsible party. *See Venicassa v. Consolidation Coal Co.*, 137 F.3d 197 (3d Cir. 1998); *Consolidation Coal Co. v. Borda*, 171 F.3d 175 (4th Cir. 1999).

This argument is not just another throw-away Due Process argument by a party feeling that it has been treated unfairly. Finality has been a central principle of dispute resolution for thousands of years. *See* n. 7, *supra*. It is central to modern law and democratic institutions. Finality and fairness go hand in hand and fairness is a core principle of Due Process of law. The Department of Labor, however, will not answer or take seriously this argument, treating it as no more than complaining. A demand for finality is not complaining by a party that thinks it has not received fair treatment. An absence of finality is incompatible with American jurisprudence.

---

[10]    It also constitutes an impermissible, irrebuttable presumption of entitlement where the fact presumed has been established not to have occurred. Where, as here, there is no proven connection between the facts established (the miner's entitlement to benefits) and the fact presumed (that the miner died due to pneumoconiosis), that too violates Marmon's right to due process. *See Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 158-59 & n.32 (1987) (noting the constitutional concern that there be "some rational connection between the fact proved and the ultimate fact presumed.") (quoting *Mobile, J. & K. C. R. Co. v. Turnipseed*, 219 U.S. 35, 43 (1910)). Although this Court has held that section 422(*l*) is not constitutionally infirm on this basis, that case did not arise in the context of a duplicate survivor's claim where it was established (and no longer subject to appeal) in the prior claim that the miner's death was not due to pneumoconiosis. *Campbell*, 662 F.3d 233. *See also West Virginia Coal Workers' Pneumoconiosis Fund v. Director*, 671 F.3d 378 (4th Cir. 2011), *cert. denied*, __ U.S. __ (2012).

Fairness for employers is not optional because this is a black lung claim. If necessary, it is requested that the Court give the issue the attention it deserves.

## VII.   CONCLUSION

For the reasons set forth above, the decision and order of the Benefits Review Board should be vacated. Mrs. Hill's subsequent application for survivor's benefits should be denied as a matter of law.

Respectfully submitted,

<u>s/Laura Metcoff Klaus</u>
Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2362

## CERTIFICATE OF COMPLIANCE

**Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 8,859 words (exclusive of the cover, table of contents and table of authorities). I relied on my word processor to obtain the count, using Microsoft Word 2003.

**TypeFace**

In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Century 12 pt.

s/Laura Metcoff Klaus
Laura Metcoff Klaus

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2013, copies of the foregoing Petitioner's Brief were served on the following party electronically through the CM/ECF notification system:

Gary Stearman, Esq.
stearman.gary@dol.gov

Barry Joyner, Esq.
Joyner.barry@dol.gov

and on the following party by U.S. mail, postage prepaid:

Ms. Eva Elizabeth Hill
P. O. Box 382
Drakesboro, KY 42337

<u>s/Laura Metcoff Klaus</u>
Laura Metcoff Klaus